LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
William Brown (WB 6828)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

EN AI LIN, REN GUI LIU, and GONGYI WANG,
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

       Plaintiffs,

       v.

BENIHANA INC., BENIHANA NATIONAL
CORP., BENIHANA NEW YORK CORP.,
HARU HOLDING CORP., HARU WALL
STREET CORP., HARU AMSTERDAM
AVENUE CORP., HARU BROADWAY CORP.,
HARU FOOD CORP., HARU GRAMERCY
PARK CORP. (f/k/a HARU SOHO CORP.),
HARU THIRD AVENUE CORP., HARU TOO,
INC., HARU CHELSEA CORP., and HARU
HELLS KITCHEN CORP.,

       Defendants.

---

Case No.:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

Jury Trial Demanded

   Plaintiffs, EN AI LIN, REN GUI LIU, and GONGYI WANG (collectively "Plaintiffs"),

on behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby file this Class and Collective Action Complaint against Defendants, BENIHANA INC.,

BENIHANA NATIONAL CORP., BENIHANA NEW YORK CORP., HARU HOLDING

CORP., HARU WALL STREET CORP., HARU AMSTERDAM AVENUE CORP., HARU

BROADWAY CORP., HARU FOOD CORP., HARU GRAMERCY PARK CORP. (f/k/a HARU

SOHO CORP.), HARU THIRD AVENUE CORP., HARU TOO, INC., HARU CHELSEA

CORP., and HARU HELLS KITCHEN CORP. (collectively, "Defendants"), and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§ 201 *et. seq.* ("FLSA") that they are entitled to recover from Defendants: (1) unpaid minimum

wages (including unpaid minimum wages resulting from an invalid tip credit) (2) unpaid overtime

premiums, (3) unpaid compensation caused by time shaving, (4) unlawfully retained gratuities, (5)

liquidated damages and statutory penalties, and (6) attorneys' fees and costs.

2.    Plaintiffs further allege pursuant to the New York Labor Law ("NYLL") that they are

entitled to recover from Defendants: (1) unpaid minimum wages (including unpaid minimum

wages resulting from an invalid tip credit), (2) unpaid overtime premium, (3) unpaid compensation

caused by time shaving,  (4) unpaid spread of hours, (5) unlawfully retained gratuities, (6) unpaid

call-in pay, (7) unreimbursed uniform expenses, (8) statutory penalties, (9) liquidated damages,

and (10) attorney's fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28

U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367.

4.    Original jurisdiction also exists over all claims in this action under the Class Action

Fairness Act, 28 U.S.C. § 1332(d), because this case is a putative class action in which: (1) there

are 100 or more members in the proposed class; (2) at least some members of the proposed class

have a different citizenship from Defendants; and (3) the claims of the proposed Class Members exceed $5,000,000.00 in aggregate.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.    Plaintiff EN AI LIN is a resident of Queens County, New York.

7.    Plaintiff REN GUI LIU is a resident of Queens County, New York.

8.    Plaintiff GONGYI WANG is a resident of Queens County, New York.

9.    Defendants in this case are direct and indirect subsidiaries of BENHIANA INC., which was taken private in 2012 by New York investment firm Angelo, Gordon & Co., which paid approximately $296 million for approximately 100 restaurants. BENIHANA, INC. operates restaurants under several brands, including Benihana Teppanyaki, Haru Sushi, and RA Sushi Bar. Defendant, BENIHANA INC., is a corporation organized under the laws of the State of Delaware, with an address for service of process at Corporate Creations Network Inc., 3411 SILVERSIDE ROAD TATNALL BUILDING STE 104, Wilmington, DE 19810. BENIHANA INC. is the top-level entity that ultimately controls operations at all of the Benihana Teppanyaki, Haru Sushi, and RA Sushi Bar restaurants. It exerts control through a chain of wholly-owned subsidiaries. Each individual restaurant is ultimately owned by a separate corporation, with each such corporation owned by the same chain of holding companies.

10.    Defendant, BENIHANA NATIONAL CORP., is a corporation organized under the laws of the State of Delaware, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Benihana National Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. BENIHANA NATIONAL CORP. is a wholly owned subsidiary of BENIHANA INC.

3

11.     Defendant, BENIHANA NEW YORK CORP., is a corporation organized under the laws of the State of Delaware, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Benihana New York Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. BENIHANA NEW YORK CORP. is a wholly owned subsidiary of BENIHANA NATIONAL CORP.

12.     Defendant, HARU HOLDING CORP., is a corporation organized under the laws of the State of Delaware, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Holding Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU HOLDING CORP. is a wholly owned subsidiary of BENIHANA NATIONAL CORP.  HARU HOLDING CORP. operates the website that all Haru locations share. This website displays all active Haru Restaurants.  See, "**Exhibit A**."  The website also offers gift cards for sale. These gift cards are redeemable at any Haru location.  See, "**Exhibit B**"

13.     Defendant, HARU WALL STREET CORP., is a corporation organized under the laws of the State of Delaware, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Wall Street Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU WALL STREET CORP. is the corporate entity associated with Defendants' Wall Street restaurant, located at 1 Wall Street Court, New York, NY 10005. HARU WALL STREET CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

14.     Defendant, HARU AMSTERDAM AVENUE CORP., is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate

Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Amsterdam Avenue Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU AMSTERDAM AVENUE CORP. is the corporate entity associated with Defendants' Amsterdam Avenue restaurant, located at 180 W. 81st St. (433 Amsterdam Ave.), New York, NY 10024. HARU AMSTERDAM AVENUE CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

15.    Defendant, HARU BROADWAY CORP., is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Broadway Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU BROADWAY CORP. is the corporate entity associated with Defendants' Broadway (or "Times Square") restaurant, located at 229 W. 43rd St., New York, NY 10036. HARU BROADWAY CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

16.    Defendant, HARU FOOD CORP., is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Food Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU FOOD CORP. is the corporate entity associated with Defendants' management offices at 15 North Mill Street, Nyack, NY 10960. HARU FOOD CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

17.    Defendant, HARU GRAMERCY PARK CORP. (f/k/a HARU SOHO CORP.), is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a

principal executive office located at Haru Gramercy Park Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU GRAMERCY PARK CORP. is the corporate entity associated with Defendants' Gramercy Park restaurant, located at 220 Park Avenue South, New York, NY 10003. HARU GRAMERCY PARK CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

18.    Defendant, HARU THIRD AVENUE CORP., is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Third Avenue Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU THIRD AVENUE CORP. is the corporate entity associated with Defendants' Third Avenue restaurant, located at 1329 3rd Avenue, New York, NY 10075. HARU THIRD AVENUE CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

19.    Defendant, HARU TOO, INC., is a corporation organized under the laws of the State of New York, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Too, Inc., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU TOO, INC. is the corporate entity associated with Defendants' Haru Sake Bar, located at 1327 3rd Avenue, New York, NY 10075. HARU TOO, INC. is a wholly owned subsidiary of HARU HOLDING CORP.

20.    Defendant, HARU CHELSEA CORP., was a corporation organized under the laws of the State of Florida, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Chelsea Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU CHELSEA CORP. has been inactive since May 14, 2018. HARU CHELSEA CORP. was the

corporate entity associated with Defendants' Chelsea restaurant located at 176 8th Avenue, New York, NY 10011. HARU CHELSEA CORP. was a wholly owned subsidiary of HARU HOLDING CORP.

21.    Defendant, HARU HELLS KITCHEN CORP., is a corporation organized under the laws of the State of Florida, with an address for service of process at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, NY 10960, and a principal executive office located at Haru Hells Kitchen Corp., 21500 Biscayne Boulevard Suite 900, Aventura, Florida, 33180. HARU HELLS KITCHEN CORP. is the corporate entity associated with Defendants' Hell's Kitchen restaurant located at 859 9th Ave, New York, NY 10019. HARU HELLS KITCHEN CORP. is a wholly owned subsidiary of HARU HOLDING CORP.

22.    At all relevant times, Defendants, BENIHANA INC., BENIHANA NATIONAL CORP., BENIHANA NEW YORK CORP., HARU HOLDING CORP., HARU WALL STREET CORP., HARU AMSTERDAM AVENUE CORP., HARU BROADWAY CORP., HARU FOOD CORP., HARU GRAMERCY PARK CORP. (f/k/a HARU SOHO CORP.), HARU THIRD AVENUE CORP., HARU TOO, INC., HARU CHELSEA CORP., and HARU HELLS KITCHEN CORP., each was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

23.    Defendants operate or operated a number of food and beverage establishments under the trade name "Haru" throughout the New York City area, including locations at Amsterdam Avenue, Hell's Kitchen, Third Avenue, Times Square, Wall Street, Park Avenue South, and Chelsea.

24.    Defendants, BENIHANA INC., BENIHANA NATIONAL CORP., BENIHANA NEW YORK CORP., HARU HOLDING CORP., HARU WALL STREET CORP., HARU

AMSTERDAM AVENUE CORP., HARU BROADWAY CORP., HARU FOOD CORP., HARU GRAMERCY PARK CORP. (f/k/a HARU SOHO CORP.), HARU THIRD AVENUE CORP., HARU TOO, INC., HARU CHELSEA CORP., and HARU HELLS KITCHEN CORP. are jointly owned and are operated as a common enterprise. BENIHANA INC. ultimately owns and controls each Defendant and each Haru Restaurant:

a)      BENIHANA INC. operates the corporate headquarters in Miami, Florida, and provides all the Haru Restaurants with use of its human resources department.

b)      All the Haru Restaurants use the marketing department of BENIHANA INC.

c)      All the Haru Restaurants receive legal advice from the General Counsel of BENIHANA INC., who oversees legal compliance for all the Haru Restaurants.

d)      All paychecks of the Haru Restaurant employees are issued through BENIHANA INC'S payroll department.

e)      All Haru Restaurants use the same Haru logo, website (www.harusushi.com) and business cards, which list locations for all Haru restaurants.

f)      Prior to opening, all new Haru Restaurants have to be approved by the Board of Directors of BENIHANA, INC.

g)      The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., shows or holiday events), as when as whenever one location is short-staffed. Defendants regularly transfer employees between locations based on their own business needs, and employees may also be transferred between Restaurants upon their own request.

h)  Employees were regularly required to transport items between restaurant locations, in accordance with the directives of central management.

i)  Upon the closure of a Haru restaurant, a number of employees were transferred to other restaurants.

25.  At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

26.  Defendants also operate (or formerly operated) restaurants in the New York area under the trade name "Benihana."

27.  Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

28.  During the relevant time period, Defendants had eight Manhattan Haru locations, seven of which employed some or all of Plaintiffs LIN, LIU, and WANG. Specifically, the restaurant locations are as follows:

1.  Defendants' Wall Street restaurant, at which Plaintiff LIU worked.

2.  Defendants' Broadway restaurant, at which Plaintiff LIN worked.

3.  Defendants' Gramercy Park restaurant, at which Plaintiffs LIN, LIU, and WANG worked.

4.  Defendants' Third Avenue restaurant, at which Plaintiff LIN worked.

5.  Defendants' Haru Sake Bar, at which Plaintiff LIN worked.

6.  Defendants' Chelsea restaurant, at which Plaintiffs LIN, LIU and WANG worked.

7.  Defendants' Hell's Kitchen restaurant, at which Plaintiff WANG worked.

8.  Defendants' Amsterdam Avenue restaurant, at which Plaintiff LIU worked.

29.    Although Plaintiffs did not work at one of Defendants' Restaurants, **all** of the Restaurants are appropriately named in this Complaint through the relevant Defendants described above. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and the relevant Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiffs seek to represent.

30.    At all relevant times, each of the Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the applicable New York laws and regulations

31.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class Members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

32.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

33.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper overtime wages for all hours worked over 40, and failure to pay for all hours worked due

to time-shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

34.     Further, with respect to employees who were employed as delivery workers (the "Delivery Subclass"), Defendants were not entitled to take any tip credits under the FLSA, or to compensate FLSA Collective Plaintiffs at sub-minimum wage base hourly rates, because they failed to satisfy all statutory requirements for taking a tip credit.

35.     Because Defendants' claimed tip credits are all invalid, the regular minimum wage rate applies—and has applied—to tipped delivery employees. However, Defendants have been paying the Delivery Subclass at far below the minimum legally allowable rate.

36.     Defendant has no valid basis to pay its employees less than the applicable minimum wage rates. Defendants' only possible justification for paying sub-minimum wage rates to the Delivery Subclass would be the use of a valid tip credit, but Defendant cannot legally claim a tip credit because it has not met the requirements to do so.

37.     Moreover, Defendants frequently claimed a higher tip credit than the maximum tip credit permissible by law.

38.     Defendants required Delivery Subclass members to participate in an improper tip pooling scheme, whereby tipped as well as non-tipped and managerial employees participated in the tip pool.

39.     Furthermore, Defendants engaged in a policy and practice of unlawfully retaining credit card tips by retaining as much as 50% of all credit card tips earned by Delivery Subclass members.

40.     Plaintiffs LIN, LIU, and WANG are all members of the FLSA Collective and the Delivery Subclass.

41.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

42.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, deliverymen, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

43.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

44.    The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number depends are presently within the sole control of Defendants, there is no doubt that there are more

than forty (40) members of the Class. The Class further includes a subclass of tipped delivery workers ("Delivery Subclass") who also number more than forty (40). Plaintiffs LIN, LIU, and WANG are members of the Delivery Subclass.

45.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, (ii) failing to pay overtime premium for hours worked in excess of forty (40) in a workweek, (iii) failing to pay wages due to time-shaving, and (iv) failing to provide Class Members with proper wage statements with every payment of wages, per requirements of the New York Labor Law.

46.    Further, Defendants failed to pay Delivery Subclass Members the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiffs LIN, LIU, and WANG  and the rest of the Tipped Subclass suffered from Defendants' invalid tip credit allowance because Defendants (i) took more than the proper amount of tip credit allowance for each payment period under the New York Labor Law, rendering their purported tip credit invalid, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding two hours or 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period or the proper rate of overtime compensation, (iv) maintained an improper tip pool and misappropriated tips, and (v) failed to accurately keep track of daily tips earned and maintain records thereof, and instead falsely recorded remaining tips after its misappropriation of some tips.

47.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

48.    Plaintiffs LIN, LIU, and WANG are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs LIN, LIU, and WANG are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

49.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

50.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

51.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants paid Plaintiffs LIN, LIU, WANG, and the Delivery Subclass less than the applicable minimum wage on the basis of a claimed tip credit;

b)    Whether Defendants' tip credit was at all times invalid because Defendants took more than the proper amount of tip credit allowance for each payment period under the New York Labor Law;

c)    Whether Defendants' tip credit was at all times invalid because Defendants caused tipped delivery employees to engage in non-tipped duties exceeding two hours or 20% of each workweek;

d)    Whether Defendants' tip credit was at all times invalid because Defendants maintained an improper tip pool and misappropriated at least 10% of the tip-pool funds to itself

e) Whether Defendants employed Plaintiffs LIN, LIU, WANG and the Class within the meaning of the New York law;

f) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs LIN, LIU, WANG and Class Members;

g) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs LIN, LIU, WANG and Class Members for their work;

h) Whether Defendants properly notified Plaintiffs LIN, LIU, WANG and the Class Members of their hourly rates and overtime rates;

i) Whether Defendants provided proper wage statements for each pay period to Plaintiffs LIN, LIU, WANG and Class Members, and whether those wage statements properly stated Plaintiffs' overtime compensation in accordance with the New York Labor Law;

j) Whether Defendants paid Plaintiffs LIN, LIU, WANG and Class Members the proper overtime compensation under the New York Labor Law;

k) Whether Defendants failed to compensate Plaintiffs LIN, LIU, WANG and Class Members for all regular and overtime hours worked due to a policy of time-shaving;

l) Whether Defendants failed to Plaintiffs LIN, LIU, WANG and Class Members all spread of hours payments for work days lasting longer than ten (10) hours.

m) Whether Defendants caused tipped delivery employees to engage in non-tipped duties exceeding two hours or 20% of each workweek;

n) Whether Defendants took proper amount of tip credit allowance for each payment period under the New York Labor Law;

o)    Whether Defendants provided proper wage statements for each pay period to Plaintiffs LIN, LIU, WANG and Class Members, in compliance with the New York Labor Law;

p)    Whether Defendants required Plaintiffs LIN, LIU, WANG and Class Members to purchase uniforms and equipment for on-the-job use using their own money and failed to reimburse for such uniforms or equipment, thereby effectively reducing the compensation of tipped employees; and

## STATEMENT OF FACTS

52.    In or about September 2006, Plaintiff LIN was hired by Defendants to work as a deliveryman. While employed by Defendants, Plaintiff LIN was regularly required to work at several of Defendants' New York City locations on an as-needed basis, specifically Haru Third Avenue, Haru Sake Bar, Haru Gramercy Park, Haru Chelsea, and Haru Broadway.  Plaintiff LIN continued to work for Defendants until in or around February 2018.

53.    LIN initially worked simultaneously at Defendants' Third Avenue restaurant, located at 1329 3rd Avenue, New York, NY 10075, and Defendants' Sake Bar, located at 1327 3rd Avenue, New York, NY 10075. In or about April 2008, Plaintiff LIN began working at Defendants' Gramercy Park restaurant, located at 220 Park Avenue South, New York, NY 10003. Plaintiff LIN worked at the Third Avenue restaurant, Sake Bar, and Gramercy Park restaurant simultaneously, on an as-needed basis. In or about December 2012, Plaintiff LIN was transferred to two of Defendants' restaurants, where he split his time at Defendants' Chelsea restaurant, located at 176 8th Avenue, New York, NY 10011, and Defendants' Broadway (or "Times Square") restaurant, located at 229 W. 43rd St., New York, NY 10036.

54.    Regardless of which restaurant he was working at, Plaintiff LIN worked for other locations on an as-needed basis and also shuttled supplies between Haru restaurants.

55.     Throughout Plaintiff LIN's employment he worked 6 days per week.  Plaintiff LIN's regular schedule was from 5:00 p.m. to 10:00 p.m., except on Tuesday when he would work from 2:30 p.m. to 10:00 p.m.  However, Plaintiff LIN would often work far more hours than his regular schedule. Plaintiff LIN, as well as FLSA Collective Plaintiffs and Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff LIN, FLSA Collective Plaintiffs and Class Members regularly worked shifts exceeding 10 hours in duration.

56.     Throughout his employment, Plaintiff LIN was paid at a sub-minimum wage base hourly rate, pursuant to an invalid tip credit. For example, in 2017, his hourly rate was $8.65, below the applicable minimum wage rate of $11.00 per hour and below the tipped minimum wage rate for deliverymen of $9.15 per hour.

57.     Defendants required Plaintiff LIN and other deliverymen to purchase equipment to deliver food. Defendants never reimbursed Plaintiff LIN and deliverymen for such required equipment. In 2006, 2009, 2011, and 2013, Plaintiff LIN purchased bicycles to perform his job, with a cost of approximately $300 each, with approximately $240 in maintenance costs per year. Other deliverymen all have similar costs. In 2015, Plaintiff LIN purchased a motorcycle to perform deliveries at a cost of $3,000.  Plaintiff LIN used the motorcycle to perform deliveries on a daily basis.  Plaintiff's costs for maintaining the motorcycle has been approximately $1,000 per year. These costs effectively reduced his pay further below the applicable minimum wage.

58.     In or about 2011, Plaintiff REN GUI LIU was hired by Defendants to work as a deliveryman and continued in that position until in or around September 2017.

59.     While employed by Defendants, Plaintiff LIU worked at Defendants' Wall Street restaurant, located at 1 Wall Street Court, New York, NY 10005. LIU also shuttled supplies

between Haru restaurants. Plaintiff LIU's employment by Defendants ended in or around August 2017.

60.    From approximately March 2009 to July 2015, Plaintiff LIU worked approximately 10-12 hours per day, 2 days per week, and 3-7 hours, 4 days per week for a total of approximately 45 hours per workweek. From approximately July 2015 to December 2017, Plaintiff LIU worked approximately 10-12 hours per day, 3 days per week, and 3-7 hours, 3 days per week for a total of approximately 50 hours per workweek. From approximately January 2018 to March 2018, Plaintiff LIU worked approximately 7-11 hours per day, 5 days per week, for a total of approximately 45 hours per workweek. Plaintiff LIU, like FLSA Collective Plaintiffs and Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff LIU, FLSA Collective Plaintiffs and Class Members regularly worked shifts exceeding 10 hours in duration.

61.    Throughout his employment, Plaintiff LIU was paid at a sub-minimum wage base hourly rate, pursuant to a purported tip credit. For example, in 2017, his hourly rate was $7.50, below the applicable minimum wage rate of $11.00 per hour and below the tipped minimum wage rate for deliverymen of $9.15 per hour.

62.    Defendants required Plaintiff LIU and other deliverymen to purchase equipment to deliver food. Defendants never reimbursed Plaintiff LIU and deliverymen for such required equipment. Plaintiff LIU purchased a bicycle to perform his job, which cost of approximately $200, as well as approximately $200 in maintenance costs per year. These work related expenses caused Plaintiff LIU's wages to fall even further below the statutory minimum wage.

63.    In or about March 2009, Plaintiff GONGYI WANG was hired by Defendants to work as a deliveryman until the end of his employment in or around March 2018.

64.     While employed by Defendants, Plaintiff WANG was regularly required to work at several of Defendants' New York City locations on an as-needed basis, specifically Haru Hell's Kitchen, Haru Gramercy Park, and Haru Chelsea.

65.     WANG initially worked primarily at Defendants' Gramercy Park restaurant, located at 220 Park Avenue South, New York, NY 10003, and also worked at Defendants Sake Bar Chelsea, Hell's Kitchen, Broadway and Third Avenue locations on an as-needed basis:

66.     Plaintiff WANG gradually transitioned to working primarily at Defendants' Chelsea restaurant, and was eventually formally transferred. When that restaurant location closed, WANG was transferred to Defendants' Hell's Kitchen restaurant. Regardless of which restaurant he was working at, Plaintiff WANG also shuttled supplies between Haru restaurants.

67.     From around March 2009 to July 2015, Plaintiff WANG worked 10-12 hours per day, 2 days per week, and 3-7 hours, 4 days per week for a total of approximately 40-45 hours per workweek. From around July 2015 to December 2017, Plaintiff WANG worked 10-12 hours per day, 3 days per week, and 2-5 hours, 3 days per week for a total of approximately 45-50 hours per workweek. From around January 2018 to March 2018, Plaintiff WANG worked 6-9 hours per day, 5 days per week, for a total of approximately 30-45 hours per workweek. Plaintiff WANG, like FLSA Collective Plaintiffs and Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff WANG, FLSA Collective Plaintiffs and Class Members regularly worked shifts exceeding 10 hours in duration.

68.     Throughout his employment, Plaintiff WANG was paid at a sub-minimum wage base hourly rate, pursuant to a purported tip credit. For example, in 2017, his hourly rate was $8.25, below the applicable minimum wage rate of $11.00 per hour and below the tipped minimum wage rate for deliverymen of $9.15 per hour.

69.    Defendants required Plaintiff WANG and other deliverymen to purchase equipment to deliver food. Defendants never reimbursed Plaintiff WANG and deliverymen for such required equipment. Plaintiff WANG purchased a bicycle to perform his job, with a cost of approximately $200, with approximately $200 in maintenance costs per year. Other deliverymen all have similar costs. In 2013, Plaintiff WANG purchased a number of motorcycle to perform his job duties. Plaintiff WANG used the motorcycle to perform deliveries on a daily basis.  Plaintiff's costs for motorcycles were as follows: in 2013, 2014, and 2015, Plaintiff WANG purchased motorcycles at respective costs of approximately $3,000, $3,000, and $2,500. His maintenance costs up until he stopped working for Defendants were approximately $600 in 2013, $4,000 in 2014, $4,000 in 2015, $4,000 in 2016, $4,000 in 2017, and $900 in 2018. These costs reduced Plaintiff Wang's take home pay even further below the applicable minimum wage.

70.    Plaintiffs and Delivery Subclass Members were compensated at sub-minimum wage base hourly rates, based on a purported tip credit. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid.

71.    Defendants failed to accurately keep track of the daily amount in tips earned by Plaintiffs and Delivery Subclass Members. Defendants also failed to maintain proper employment records as required by law.

72.    Throughout his employment, Plaintiffs were regularly required to spend at least 2 hours or more than 20 percent of their working time each shift performing non-tipped work. This non-tipped work included hauling supplies between restaurants, passing out flyers, meal preparation, cleaning, discarding rubbish, putting together delivery containers, and packaging delivery orders. Likewise, Delivery Subclass Members all spent more than 20% of their time performing non-tipped tasks.

21

73.    Defendants instituted and mandated an illegal tip pooling scheme that Plaintiffs and Delivery Subclass Members were required to participate in, even though they did not consent to such scheme.  In addition, Defendants engaged in an improper tip-pooling scheme by including tipped as well as non-tipped and managerial employees in the tip pool.  Specifically, Defendants engaged in a companywide policy whereby managers would retain 10% of all tips earned by delivery workers.  Moreover, managers would retain as much as 50% of tips for large orders.

74.    Additionally, Defendants engaged in a policy and practice of unlawfully retaining credit card tips.  At certain of Defendants' locations as much as 50% of credit card tips were retained by Defendants.

75.    Defendants required Plaintiffs, as well as Delivery Subclass Members, to work off the clock on a daily basis, resulting in unpaid overtime and regular wages. They were required to perform between one and three hours of off the clock work per day. Plaintiffs and Delivery Subclass Members would regularly perform the following off the clock work:

- Buying supplies or picking up supplies from other Haru locations to bring them to work;
- Coming in early to each shift and, prior to clocking in each day, to perform non-tipped tasks (including meal preparation, cleaning, and constructing delivery containers) for approximately half an hour. Managers acting pursuant to Defendants instructions would refuse to let Plaintiffs clock in until their scheduled shift started. Defendants never paid Plaintiffs for working such pre-shift off the clock hours;
- Delivering food, passing out flyers, or hauling supplies between restaurants during breaks;
- Performing non-tipped tasks (including cleaning, discarding rubbish, and constructing delivery containers) in the restaurant after he clocked out or was clocked out by a manager.
- Delivering food to customers after he had already clocked out.

76.    Due to Defendants' above-described practices of requiring uncompensated off the clock work, Plaintiffs and Delivery Subclass Members were deprived of regular and overtime compensation for approximately 10 hours each workweek.

77.    For hours in excess of 40 that were not subject to time-shaving, Plaintiffs were paid variable overtime rates, which were consistently less than the correct overtime rate. Plaintiffs' fluctuating overtime pay rates were never explained to them. Likewise, Delivery Subclass Members were all deprived of overtime premiums due to being paid overtime at incorrect rates below the required overtime premium rate.

78.    Similarly, FLSA Collective Plaintiffs and Class Members were deprived of regular and overtime compensation each week due to Defendants' commonly applicable policies of requiring uncompensated off the clock work. Class Members were frequently required by management to come in early and start working before clocking in, and also to clock out and keep working at the end of the day. Plaintiffs, FLSA Collective Plaintiffs and Class Members were never paid for the off the clock time that they were required to work each week.

79.    In addition to forcing Plaintiffs to work off the clock, Defendants directly altered Plaintiffs timesheets. Throughout their employment by Defendants, Defendants regularly adjusted Plaintiffs recorded clock-in and clock-out times, resulting in unpaid overtime and regular wages. These adjustments were not random, but were primarily based on two factors: (a) reducing the recorded interval of time between first clock-in and last clock-out to be less than ten hours, so that Defendants would not pay owed "spread of hours" pay, and (b) reducing the total amount of time worked to be less than his scheduled number of hours per week, which had the effect that Defendants would not pay overtime. Similarly, FLSA Collective Plaintiffs and Class Members were deprived of regular and overtime compensation each week due to Defendants' commonly applicable policies of falsifying clock-in and clock-out times. Like Plaintiffs, FLSA Collective Plaintiffs and Class Members were never paid for the off the clock time that they were required to work after they clocked in and before they clocked out.

80.    Throughout their employment by Defendants, Plaintiffs were sent home early whenever there was not enough work to do, but never received proper call-in payments for working such shifts. This occurred approximately once a month, and cut those shifts to approximately 2 hours on average. Similarly, Class Members were frequently required to go home early during their scheduled shifts, but were never paid proper call-in payments.

81.    Defendants deducted a meal credit from Plaintiffs' paychecks. Defendants set aside a few large containers of food at irregular times during the middle of the workday, and the food in these containers constituted lunch for all employees. However, there was never enough food for all employees, on a typical day Defendants only provided food for about half of the employees. Furthermore, the food that was provided was insufficient.  The meals were generally made up of one or at most two of the four required food groups.  On most days the meal was composed of just rice or rice with a vegetable or small amounts of meat. Like Plaintiffs, FLSA Collective Plaintiffs and Class Members were regularly subject to an automatic deduction for lunch even though no meal was effectively provided.

82.    Defendants required Plaintiffs and Delivery Subclass Members to purchase polo shirts and dress pants as uniforms that were required on-the-job attire.  Defendants never reimbursed Plaintiffs and Delivery Subclass Members for such required uniforms. The cost of purchasing and maintaining the uniforms was approximately $260 per year.

83.    Defendants never provided Plaintiffs, FLSA Collective Plaintiffs or Class Members with proper wage statements in compliance with the New York State Wage Theft Prevention Act. The wage statements provided to Plaintiffs and Delivery Subclass Members did not state that a tip credit was being charged against their wages.  Moreover, the wage statements provided to Plaintiffs and Class Members did not accurately state the applicable minimum wage, the correct

overtime rates, the full amount of tips earned, if applicable, or accurately state the number of hours that they worked each week due to time shaving.

84.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

85.    Plaintiffs reallege and reallege and reaver the preceding paragraphs of this class and collective action Complaint as fully set forth herein.

86.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

87.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

88.    At all relevant times, each Defendant had gross annual revenues in excess of $500,000.

89.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs, and Delivery Subclass Members, for their hours worked. Defendants were also not entitled to claim any tip credits because they failed to satisfy the statutory requirements under the FLSA.

90.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

91.    At all relevant times, Defendants willfully engaged in a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs for all hours worked due to time shaving.

92.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

93.    Defendants further failed to reimburse Plaintiffs and Delivery Subclass Members for "tools of the trade" purchased by Plaintiffs and Delivery Subclass Members.  Specifically, Defendants failed to reimburse Plaintiffs for the costs of bicycles and motorcycles, which were required for them to perform their delivery duties, as well as the cost of maintenance for those vehicles.  Defendants' failure to reimburse for tools of the trade caused Plaintiffs and Delivery Subclass Members' net wages to fall below the statutory minimum.

94.    Defendants took an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because they did not receive proper meals from Defendants.

95.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, unpaid wages due to time shaving, unreimbursed tools of the trade, plus an equal amount as liquidated damages.

96.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

97.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

98.    Plaintiffs LIN, LIU, and WANG reallege and reaver the preceding paragraphs of this class and collective action Complaint as fully set forth herein.

99.    At all relevant times, Plaintiffs LIN, LIU, and WANG and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

100.    Defendants willfully violated Plaintiffs LIN, LIU, and WANG's and Delivery Subclass Members' rights by failing to pay them proper wages in the lawful amount for all hours worked. Defendants were not entitled to claim any tip credits.

101.    At all relevant times, Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them for all hours worked due to a policy of time shaving.

102.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the wage statements requirements under the NYLL because they did not accurately state the applicable minimum wage, the correct overtime rate, the amount of tips earned, or that a tip credit was being charged.

103.    Defendants were not entitled to take a tip credit as they failed to provide proper notice of the tip credit, failed to provide proper wage statements informing tipped employees of the

27

amount of tip credit taken for each payment period, and failed to accurately record the amount of tips earned by Plaintiffs and Delivery Subclass Members.  Specifically the notice did not accurately state the applicable minimum wage, the full amount of tips earned, or that a tip credit was being charged against their wages.  Furthermore, the wage statements provided to Plaintiffs and Delivery Subclass Members did not accurately state the number of hours that they worked each week due to time shaving.  Furthermore, throughout the relevant period Defendants exceeded the permissible tip credit amount.

104.    Defendants further failed to reimburse Plaintiffs and Delivery Subclass Members for "tools of the trade" purchased by Plaintiffs and Delivery Subclass Members.  Specifically, Defendants failed to reimburse Plaintiffs for the costs of bicycles and motorcycles, which were required for them to perform their delivery duties, as well as the cost of maintenance for those vehicles.  Defendants' failure to reimburse for tools of the trade caused Plaintiffs and Delivery Subclass Members' net wages to fall below the statutory minimum.

105.    Defendants knowingly and willing refused to reimburse Plaintiffs' and the Class's required uniform expenses in violation of the NYLL.

106.    Defendants failed to pay Plaintiffs and Class Members call-in pay, equal to four hours of pay at the applicable minimum wage, for days they were sent home early after reporting to work.

107.    Due to the Defendants' New York Labor Law violations, Plaintiffs LIN, LIU, and WANG Delivery Subclass Members are entitled to unpaid minimum wages, unreimbursed equipment expenses.  Plaintiffs and Class Members are entitled to recover from Defendants unpaid overtime premiums,  unpaid wages due to time shaving, unpaid call-in pay, unpaid spread-of-hours wages, unreimbursed uniform expenses, reasonable attorneys' fees, liquidated damages, statutory

penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime compensation due under the FLSA and NYLL;

d.  An award of unpaid minimum wages due under the FLSA and NYLL;

e.  An award of unpaid wages caused by time shaving under the FLSA and NYLL;

f.  An award of unpaid spread of hours premium due under the NYLL;

g.  An award of unreimbursed uniform expenses due under the NYLL;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

j.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiffs as Representatives of the Class; and

n.  Such other and further relief as the Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: August 10, 2018

                                        Respectfully submitted,

By:  */s/ C.K. Lee*
          C.K. Lee, Esq.

          LEE LITIGATION GROUP, PLLC
          C.K. Lee (CL 4086)
          William Brown (WB 6828)
          30 East 39th Street, Second Floor
          New York, NY 10016
          Tel.: 212-465-1188
          Fax: 212-465-1181
          *Attorneys for Plaintiffs,*
          *FLSA Collective Plaintiffs and the Class*

# EXHIBIT A



Home > Restaurants

# RESTAURANTS

*Creating Great Guest Memories!!*



## NEW YORK

### NYC: AMSTERDAM AVE

📍 433 Amsterdam Avenue, New York, NY 10024
📞 212.579.5655

RESERVATIONS

VIEW RESTAURANT PAGE

### NYC: HELL'S KITCHEN

📍 859 Ninth Avenue, New York, NY 10019
📞 212.301.4440

RESERVATIONS

ORDER ONLINE

VIEW RESTAURANT PAGE

### NYC: THIRD AVE - DELIVERY ONLY

VIEW RESTAURANT PAGE

### NYC: TIMES SQUARE

📍 229 West 43rd Street, Unit 221, New York, NY 10036
📞 212.398.9810

RESERVATIONS

VIEW RESTAURANT PAGE

### NYC: WALL STREET

📍 1 Wall Street Court, New York, NY 10005
📞 212.785.6850

RESERVATIONS

VIEW RESTAURANT PAGE

# EXHIBIT B

